UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAMION SMITH,

Plaintiff,

v.

Case No. 2:24-cv-565-KCD-KRH

G.A. FOOD SERVICES OF PINELLAS COUNTY, LLC,

Defendant.

____________________________________/

# ORDER

Plaintiff Damion Smith alleges that his former employer, Defendant G.A. Food Services of Pinellas County, LLC ("GAF"), violated Title VII and the Florida Civil Rights Act ("FCRA") by subjecting him to racial discrimination and sexual harassment, and then firing him when he objected. (Doc. 4.)[1] GAF now moves for summary judgment. (Doc. 61.) The Court struck Smith's response because it failed to comply with the Court's procedures for summary judgment briefing. (Doc. 66.) Though Smith was given the chance to try again, he failed to file an amended response. Smith was warned that failure to do so would result in the Court considering GAF's motion unopposed. (Doc. 66.) For the reasons below, summary judgment is granted.

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Smith alleges that GAF discriminated and retaliated against him because of his race, sex, religious beliefs, and engaging in protected activity. (*See* Doc. 4.) Because the complaint is not verified, it isn't evidence that the Court may consider in adjudicating a motion for summary judgment. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). And although the motion is unopposed, the Court cannot grant summary judgment by default. See *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Still, the Court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id*. "At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at 1101-02.

Here are the material facts supported by GAF's evidence. (Docs. 61, 62.) GAF delivers meals to seniors, healthcare patients, and childcare programs. In August 2022, GAF hired Smith to work as a Field Service Representative ("FSR") in its Fort Myers facility. Smith's primary role was delivering food to customers in Southwest Florida along an established route. After his hire, Smith received and acknowledged GAF's discrimination, harassment, equal employment opportunity, and antiharassment policies. These policies forbid

workplace harassment and discrimination, instruct employees to report concerns, and prohibit retaliation. Smith also acknowledged GAF's Code of Conduct and Basic Work Rules, which prohibit threatening behavior, insubordination, loafing, and smoking.

All FSRs reported to Unit Manager, Jamie McCartney.[2] Many of the customers Smith interacted with were Black women. He once received a complaint from some of them about the bananas he delivered. He relayed their concerns to McCartney, who asked whether they accepted the fruit. When he said they did, she called them "so sneaky" or "sassy." Smith testified that he believes those terms are racially charged and offensive towards the Black community. (Doc. 62-1 at 138:2-22.) McCartney was unaware of that connotation when she used the term and did not mean to make a racially charged comment.

Each morning, Smith, like other FSRs, was required to inspect his assigned vehicle and submit a report to McCartney before departing. Smith often burned sage in his truck during pre-trip inspections, claiming it was part of his Yoruba faith, but never requested permission or an accommodation. GAF implemented an FSR handbook stating that drivers must record time accurately and may need to assist with job assignments

[2] McCartney's last name is now Coleman. *See* Doc. 62-8. Because her last name was McCartney while Smith was employed by GAF, the Court uses McCartney here.

other than driving, as management sees fit. Smith received and acknowledged the handbook.

At least two times (December 2022 and June 2023), GAF's payroll vendor made an error, and Smith's pay was not deposited. GAF addressed the problem and paid Smith each time.

Smith emailed McCartney requesting leave for his mother's medical emergency and submitted an FMLA request. Because Smith had been employed less than 12 months, GAF's third-party administrator denied his FMLA request. Still, GAF allowed Smith to take a month of unpaid personal leave and later extended it at Smith's request. Smith also received financial assistance from GAF while he was on leave. (Doc. 4 ¶ 28.)

After returning, Smith increasingly questioned whether McCartney and Tamika Spencer, Lead Driver at the Fort Myers facility, could ask him to perform non-driving tasks. If he believed something was not in his job description or handbook, he demanded that they show him where it was written. Smith openly challenged his managers' authority to assign him routine work tasks—such as inflating his truck tires—that he claimed were not expressly listed in his job description. He encouraged other employees to do the same. This conduct grew increasingly disruptive. In early-mid July 2023, other employees worked together to pack boxes while Smith refused to

assist, despite being asked to do so—one employee recalled he sat outside in his truck waiting for them to finish.

By early August 2023, Smith had submitted complaints about his managers, and his coworkers had submitted complaints about him. For example, FSR Miguel Sierra told McCartney and Spencer that Smith made him uncomfortable, pressured him to speak with Smith's lawyer, and that other employees never wanted to be alone with him. FSR Ana Zavala and Spencer also complained that Smith was negative and refused to be a team player. McCartney told the team to work together as best they could. GAF investigated, and Smith refused to participate. Ultimately, GAF found no evidence to corroborate Smith's allegations. His coworkers, in contrast, universally described him as hostile and as making the workplace uncomfortable.

In early July 2023, McCartney noticed that Smith was absent from a morning meeting despite being clocked in. Spencer went to look for him, and about 15 minutes later, Smith walked in. Spencer reported she saw him getting out of a rideshare outside the building. McCartney suspected Smith clocked in before arriving and worked with corporate to restrict clock-in access to facility computers. She did not discipline Smith for this.

As for the sexual harassment claim, Smith alleges that one time in July 2023, McCartney looked at him "seductively" while in her office and wore an

unbuttoned cardigan, exposing a tank top with lace trim. The next month, Spencer asked Smith to meet with her and McCartney; he refused to meet in McCartney's office, so they met in an adjacent one. McCartney asked why Smith had not informed them when he failed to complete deliveries the day before. Smith initially said it slipped his mind, then insisted he was unaware of any written policy requiring notification.

On another occasion, McCartney asked Smith to take the truck in for a tire repair, but he refused, stating that it was not part of his job description. Instead, Smith waited (on the dock, but without performing any work) until another employee returned from getting the truck repaired, then completed his deliveries. Smith also refused to put air in his tire because he could not afford it.

In August 2023, Kaitlyn Waldie, Spencer, and an anonymous employee each submitted complaints about Smith to GAF's HR Hotline. Waldie described him as disrespectful and insubordinate to McCartney, to the point that the workplace was uncomfortable. Katy Zazaian, Senior HR Business Partner, launched an investigation and integrated it with her planned August 4, 2023, trip to investigate Smith's complaint. Smith refused to speak to Zazaian and Regional Director Neil King. They interviewed all other FSRs and staff, who universally described McCartney as a great boss who had never behaved inappropriately. By contrast, the employees reported Smith

made them uncomfortable, often openly questioned authority, and had even physically grabbed Sierra to drag him to speak with Smith's attorney. Zazaian suspended Smith that afternoon, August 4, 2023.

The day after his suspension, Smith submitted multiple complaints about past incidents involving McCartney and Spencer. Smith complained that McCartney and Spencer subjected him to "daily harassment," including truck inspections, accusations of policy violations, and fabrication of incident reports. Zazaian investigated these complaints and returned to the facility on August 14, 2023, for additional interviews. She found no evidence to corroborate any of them.

Based on all the witnesses' accounts, Zazaian determined that Smith was so disruptive to the workplace and so upsetting to his coworkers that separation was warranted. McCartney, Spencer, and King played no role in her decision. On August 15, 2023, Zazaian and one of GAF's in-house attorneys, Uriel Arroyo called Smith and informed him of the separation decision. Smith was so verbally abusive and hostile to Arroyo that Zazaian terminated the call.

## II. Legal Standard

Summary judgment is not a substitute for trial. It is appropriate only "when a movant shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Gonzalez v. Indep.*

*Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at *2 (11th Cir. Jan. 30, 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). We must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at *2. If the record is so one-sided that a party must prevail as a matter of law, summary judgment is appropriate.

The mechanics are straightforward. The moving party bears the initial burden. It must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must then step up, go beyond the pleadings, and point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019).

## III. Discussion

Smith brings four claims:

- Race Discrimination under Title VII of the Civil Rights Act of 1964 (Count I);

- Sexual Harassment in violation of the Florida Civil Rights Act (Count III);
- Retaliation in violation of Title VII and the FCRA (Counts II and IV); and
- Gross Negligence under Section 768.72(b), Florida Statutes (Count V).

(Doc. 4.) The Court considers each claim in turn.

**A. Race Discrimination**

Title VII bars private employers from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privilege of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can rely on direct or indirect evidence to establish race discrimination. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007). When a plaintiff provides no direct evidence, a court reviews the claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998).

Under *McDonnell Douglas*, a plaintiff bears the initial burden of making a prima facie case of race discrimination. 411 U.S. at 802. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its adverse action against

the plaintiff. *Id.* If the defendant does so, the plaintiff must show that the defendant's explanation is a pretext for discrimination. *Id.* at 804.

Here, Smith provides no direct evidence of race discrimination. Accordingly, the Court analyzes his race discrimination claim under *McDonnell Douglas*.

Smith has failed to make a prima facie case of race discrimination. To do so, he must show that: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified to perform the job in question; and (4) he was treated less favorably than a similarly situated employee outside his protected class. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019).

GAF does not contest that Smith is a member of a protected class or that it subjected him to an adverse employment action. (Doc. 61 at 16.) Instead, GAF argues that Smith has failed to demonstrate that he was qualified to perform his job. (*Id.*) An individual is "qualified" for a position if he consistently meets the criteria that his employer specified for the position. *Wright v. Southland Corp.*, 187 F.3d 1287, 1300, n.16 (11th Cir. 1999). Smith must show that he met GAF's "legitimate expectations" and "objective qualifications" for his role. *Vessells v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2002).

As outlined above, Smith cannot meet this burden. GAF demonstrates that Smith's suspension and firing were not a linear response to his internal complaints, but rather the culmination of an independent human resources investigation into his own misconduct. He was expected to complete deliveries in a timely manner throughout Southwest and Central Florida along his assigned route, yet he failed to do so on several occasions. When he was unable to complete deliveries for any reason, he was expected and required to alert McCartney or Spencer, but he failed to do so and claimed this was not explicitly included in his job description. Additionally, Smith was required to assist with obtaining necessary repairs for his assigned vehicles, but he refused to do so twice. To state the obvious, an employee who refuses to perform the basic and expected functions of his role is not qualified for that role.

Smith also made coworkers feel uncomfortable—even threatened. He was either unable or unwilling to work with others and thus was not qualified for his position. *See, e.g.*, *Gore v. Jacobs Eng'g Grp.*, 706 F. App'x 981, 984 (11th Cir. 2017) (upholding summary judgment for employer where plaintiff, who claimed he was terminated because of race discrimination, was described by coworkers as "overbearing, abrasive, insubordinate, uncompromising, and unaccepting of criticism").

Aside from the *McDonnell Douglas* framework, an employee can still survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*. A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) "systematically better treatment of similarly situated employees," and (3) pretext. *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

The Court does not find sufficient evidence to establish a convincing mosaic of discrimination to survive summary judgment. With no response from Smith, and after reviewing GAF's evidence, the Court sees no factual disputes that should be decided by a jury. There is simply no evidence of racially biased comments close to Smith's termination date that would support an "inference of discrimination." *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998). And Smith offers no evidence to

discredit the testimony of GAF's employees. (Doc. 62.) Summary Judgment on the race discrimination claim is thus granted.

**B. Sexual Harassment**

In Count III, Smith advances a claim of sexual harassment in violation of the FCRA. (Doc. 4.) This claim is subject to the same burden-shifting framework as his sexual harassment claim under Title VII. *Clark-Hilery v. Marketopia LLC*, No. 8:23-cv-284-TPB-AEP, 2025 WL 822743, at *3 (M.D. Fla. Mar. 14, 2025). This type of claim has five elements: (1) plaintiff "belongs to a protected group"; (2) he was "subject to unwelcome harassment"; (3) "the harassment was based on a protected characteristic"; (4) "the harassment was sufficiently severe or pervasive to alter the conditions of his employment"; and (5) his "employer was responsible for the hostile work environment." *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 774 (11th Cir. 2024).

GAF does not dispute that Smith belongs to a protected class because of his sex, or that if sexual harassment by McCartney did occur, GAF could be held liable under a theory of vicarious liability given her position within the company. (Doc. 61 at 19.) Even so, the Court agrees with GAF that Smith cannot establish a prima facie case because no conduct was severe or pervasive enough to alter the conditions of Smith's employment.

"Either severity or pervasiveness is sufficient to establish a violation of Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010). This inquiry requires that the employee "subjectively perceive the harassment as sufficiently severe and pervasive," and that perception must "be objectively reasonable." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1335 (11th Cir. 2023). GAF contends that even assuming Smith subjectively perceived the workplace as hostile due to McCartney's one-time outfit choice, Smith cannot show it was objectively reasonable for him to have felt that way. (Doc. 61 at 20.)

Objective severity and pervasiveness are "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Yelling*, 82 F.4th at 1335. Courts consider "(1) the frequency of the conduct, (2) its severity, (3) whether it was physically threatening or humiliating, or a mere offensive utterance, and (4) whether it unreasonably interfered with the employee's job performance." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1302 (11th Cir. 2023). No one factor is determinative and this inquiry "is not subject to mathematical precision." *Melton v. I-10 Truck Ctr. Inc.*, 166 F.4th 905, 918 (11th Cir. 2026); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299 (11th Cir. 2012).

These factors do not favor Smith. The evidence recalls one (maybe two) incidents that Smith considered sexualized. An encounter in McCartney's

office where she looked at him seductively, revealing a lace tank top under her cardigan. But Smith admitted that she wore the allegedly inappropriate tank top only once. All he saw was cleavage, and she said nothing overtly sexual during the encounter. Her conduct was not physically threatening or humiliating. Indeed, "severe" conduct typically involves verbal harassment combined with unwanted physical contact. *See Olson v. Lowe's Home Centers Inc.*, 130 F. App'x 380, 388 (11th Cir. 2005) (harasser made explicitly sexual comments and rubbed his entire body against plaintiff "on two occasions"). This case has none of that. And on another occasion, McCartney said that customers who accepted bananas were "sneaky" or "sassy," which fails the objective severity and pervasive test. Finally, there is no evidence that the conduct affected Smith's work performance. At bottom, a reasonable jury could not find that the conduct was sufficiently pervasive, so summary judgment is granted as to Count III.

**C. Retaliation**

In Counts II and IV, Smith advances claims for retaliation under Title VII and the FCRA. (Doc. 4.) These claims are subject to the same burden-shifting framework as above. *Clark-Hilery* 2025 WL 822743, at *3. Title VII and the FCRA prohibit retaliation against employees who oppose unlawful employment practices. 42 U.S.C. § 2000e-3(a); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020). For these claims, a plaintiff

must show (1) that he engaged in a protected activity, (2) that he suffered an adverse employment action, and (3) that a causal relation exists between the two events. *Gogel*, 967 F.3d at 1134-35; *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1352 (11th Cir. 2025).

Smith claims that after he "complained of his disparate treatment … complained to human resources for their failure to pay him … inform coworkers of their protected rights [and] … report[ed] to OSHA," GAF retaliated against him by terminating his employment. (Doc. 4 ¶¶ 51, 53.) The complaint does not mention any other alleged protected activities. (*Id.*)

While Smith lodged many internal complaints, none mentioned any "disparate treatment." The two payroll errors that occurred during Smith's tenure were remedied. He did not complain to the HR team about them. Nor was GAF informed of the anonymous OSHA complaint Smith lodged until after his termination became effective. Likewise, his EEOC Charge, OSHA Section 11(c) Complaint, FCHR Charge, and NLRB Charge were filed *after* his termination. Therefore, none of these alleged protected activities can support his retaliation claims: GAF cannot retaliate against an employee for complaints that did not exist or that it never learned of. *See Alford v. Martin & Gass, Inc.*, 391 F. App'x 296, 304 (4th Cir. 2010) (finding no basis for imputing liability for retaliatory harassment to plaintiff's employer where

plaintiff "conceded that he never reported the harassment" and had "not otherwise shown that [his employer] was aware of it").

Beyond the conclusory nature of Smith's allegations, a party simply "cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him[.]" *First Nat'l Bank of Ariz. v. Cities Servs., Co.*, 391 U.S. 253, 289 (1968). That is what we have here. Summary judgment on the retaliation claims is thus granted.

**D. Gross Negligence**

That leaves the gross negligence claim. Smith's theory to support this claim is unclear. The complaint seems to lump all previous claims together and label them as gross negligence.

Because Florida "does not recognize a common law cause of action for negligent failure to maintain a workplace free of" harassment, this final claim fails as a matter of law. *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030 (Fla. Dist. Ct. App. 2002); *see also Jackman v. 20th Jud. Cir. Ct. Admin.*, No. 219CV828FTM38MRM, 2020 WL 3895425, at *4 (M.D. Fla. July 10, 2020); *Santarsiero v. Martin*, No. 220CV00435FTM29NPM, 2020 WL 7425257, at *5 (M.D. Fla. Dec. 18, 2020) ("There is no common law claim of harassment as an independent tort under Florida law."); *Merrick v. Radisson Hotels Int'l, Inc.*, No. 8:06CV01591

T24TGW, 2007 WL 1576361, at *5 (M.D. Fla. May 30, 2007) (dismissing negligent retention and supervision claims based solely on sexual harassment since "Florida law does not recognize a common law cause of action based on the negligent failure to maintain a workplace that is free of sexual harassment"). So summary judgment is appropriate here as well. *See Wheeler v. Blackbear Two, LLC*, No. 6:12-CV-583-ORL-37, 2012 WL 3596128, at *2 (M.D. Fla. Aug. 21, 2012) (dismissing claims stemming from supervisors' and employees' harassment "[b]ecause Plaintiff fail[ed] to allege an injury resulting from tort which is recognized under common law"); *Smith v. Am. Online, Inc.*, 499 F. Supp. 2d 1251, 1267 (M.D. Fla. 2007) (same).

## IV. Conclusion

In sum, Smith has not shown that there is a dispute of material fact to take his claims to a jury. The record forecloses any questions about the pervasiveness of the harassment and the adequacy of GAF's response. There is no evidence of discrimination or retaliation. And his negligence claim is done since it does not exist under Florida common law. GAF's unopposed motion for summary judgment (Doc. 61) is therefore **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on July 31, 2026.

Kyle C. Dudek
United States District Judge